[No. 24780. Department Two. January 11, 1934.]

THE STATE OF WASHINGTON, *Respondent,* v. JAKE SALZMAN *et al., Appellants.*[1]

[1]Reported in 28 P. (2d) 272.

*John F. Dore* and *T. M. Royce,* for appellants.

*Frank B. Malloy* and *LeRoy McCann,* for respondent.

GERAGHTY, J.—Appellants were convicted under an indictment charging them with stealing a gelding, belonging to George Batterman, from a barn in Douglas county. They urge here that the evidence was not sufficient to warrant their conviction, and that a certain instruction given by the trial court was erroneous.

The horse alleged to have been stolen was owned by George Batterman, and was taken from his barn a short distance out of East Wenatchee, in Douglas county. Batterman testified that, on discovering the loss of his horse, he investigated and found tire tracks of a truck that had recently been on the farm. He traced the tracks for about a mile across his land to a highway, and several miles along the highway toward Wenatchee. He also traced the hoof marks of the horse following the course of the tire tracks. He identified the hoof marks in part by the fact that the horse had one shoe off. The ground near the barn indicated that several efforts were made to get the horse into the truck, which apparently failed. Two pieces of rope two or three feet in length were also found.

After three days search for the horse and truck, he found a truck whose tires were similar, as he thought, to the tires that made the tracks in his field and on the highway. He found also knotted to the truck part of a rope, similar to the rope found in his field. The truck belonged to, and was used by, the Portland New & Second Hand Store, in Wenatchee, of which appel-

lant Salzman was manager. Appellant Wiley was employed in the store by Salzman.

Some three or four days after identifying the truck, Batterman found the horse on the farm of T. P. Van Selus, some seven or eight miles in the hills out of Wenatchee.

The horse was taken from Batterman's barn on the night of April 6th. Van Selus testified that he had lent appellant Salzman a team of horses in the latter part of March, and that Salzman returned one horse, explaining that the other had strayed away and could not be found, and promised to get Van Selus another to replace it. Salzman did not replace the horse immediately, and, on Van Selus' insistence, promised to deliver one by Monday, April 7th. On this day, about five o'clock in the morning, Van Selus' son was awakened by a noise in the barn, and, on going there, found the horse which subsequently proved to have been stolen from Batterman. The person delivering the horse had left. The following evening, Van Selus received a telephone call from Salzman, asking how he liked the horse, to which Van Selus replied that it was too large for his purpose. Salzman said possibly he could later trade it for another horse with Van Selus' uncle, living near Mansfield.

Salzman, testifying in his own behalf, said that he had purchased the horse from a man named Becker on April 5th; that he had bought it for the store, paying part cash and part merchandise. He took the following receipt from Becker:

"April 5, 1931. Sold one black horse to Portland New and Second Hand Store. For sum of $67.50. Received merchandise of $46.25 by cash $21.25.

H. R. Becker."

He did not remember having seen Becker before the sale, and had not seen him since. He described Becker

as blond in color, "about five foot five and a half, something like that" in height, but could not remember anything further about him. E. S. Oei, on behalf of appellants, testified as to some conversation with the man alleged to have sold the horse, but was not present at the transaction. He had not known the man, whom he described as a big man, forty-five years old, and a tall man. Oei's testimony as to the stranger was as indefinite and inconclusive as that of Salzman.

Salzman also testified that, after purchasing the horse from Becker, he had him delivered to Van Selus by appellant Wiley. Wiley testified that he delivered the horse under orders from Salzman.

■ We are of the opinion that the evidence was sufficient to sustain the jury's verdict as to appellant Salzman. He bases his contention as to the insufficiency of the evidence mainly upon his explanation of possession, and argues that his uncontradicted explanation destroys the force of any inference of guilt arising from his possession of the horse. But the jury were not required to accept his explanation. His possession of the horse and his explanation were to be weighed by the jury, with the other facts and circumstances of the case, in arriving at their verdict.

■ The following instruction was given by the court:

"I instruct you that the exclusive recent possession of property stolen is a circumstance which may be considered by you in connection with all the other circumstances of the case in determining the guilt or innocence of the defendants, and is to be given such weight for or against him or them as you deem it fairly entitled to."

It is objected that this instruction was erroneous, in that it made no reference to appellant's explanation of possession. This contention is without merit.

"The possession of recently stolen property may or may not be a criminating circumstance, and whether it is or not depends upon the facts and circumstances connected with such possession. It is a circumstance to be considered by the jury in connection with all the other evidence in the given case, in determining the guilt or innocence of the accused; and its weight, as evidence, like that of any other fact, is to be determined by them alone." *State v. Walters*, 7 Wash. 246, 34 Pac. 938, 1098.

What we say has reference to the case against Salzman, who had actual and constructive possession of the stolen horse, and we see no reason for disturbing the verdict as to him.

In respect to appellant Wiley, however, we are of the opinion that the evidence was not sufficient to warrant the jury's verdict. The evidence discloses his only connection with the transaction was the delivery of the horse to Van Selus, under orders from Salzman, his employer. The chain of circumstances that point to Salzman's guilt are not equally convincing against Wiley. His delivery of the horse, under the circumstances disclosed by the record, could be wholly consistent with his innocence.

The judgment will be affirmed as to appellant Salzman, and reversed as to appellant Wiley.

BEALS, C. J., BLAKE, TOLMAN, and HOLCOMB, JJ., concur.